No. 26,661.

WULFEKUHLER STATE BANK, *Appellant,* v. S. N. WIBLE et al.,
*Appellees.*

SYLLABUS BY THE COURT. ·

1. BILLS AND NOTES—*Validity of Accelerating Provision in Mortgage—Holder
in Due Course.* The amendment to original section 5 of the negotiable in-
struments law, providing that the negotiable character of an instrument
otherwise negotiable is not affected by provisions or agreements in con-
current writings or mortgages given to secure payment of such instruments
(R. S. 52-205), did not invalidate provisions in mortgages accelerating ma-
turity of notes secured, or modify the requirement that a holder in due
course must acquire the instrument before it is overdue (R. S. 52-502).

2. SAME—*Holder in Due Course—Effect of Accelerating Provisions.* A bank
acquired several of a series of notes secured by chattel mortgage before they
became due by their own terms, but after they had become due by virtue
of a provision of the mortgage accelerating their maturity. The bank knew
of the provision of the mortgage when it acquired the notes. *Held,* the bank
was not a holder in due course.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT,
judge. Opinion filed May 8, 1926. Affirmed.

*E. L. Foulke, James B. Nash, Roy H. Wasson,* all of Wichita, and *W. W.
Hooper,* of Leavenworth, for the appellant.

*Robert C. Foulston, W. E. Holmes, D. W. Eaton, George Siefkin* and *S. L.
Foulston,* all of Wichita, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action in the district court was one by the holder
of promissory notes to recover on them and to foreclose a chattel
mortgage securing them. The jury found plaintiff was not a holder
in due course, and allowed an offset. Plaintiff appeals. The prin-
cipal question is whether plaintiff was a holder in due course.

The petition contained seven causes of action, six on the notes
and a seventh on the mortgage. The notes were dated January 1,
1922, were for $575 each, and bore interest at the rate of eight per
cent per annum, payable semiannually. They matured and were
purchased on the following dates:

No. 1, due July 15, 1922, purchased July 10, 1922.
No. 2, due September 15, 1922, purchased March 17, 1922.
No. 3, due October 15, 1922, purchased September 15, 1922.

Bills and Notes, 8 C. J. pp. 201 n. 34, 465 n. 21, 477 n. 20; 34 A. L. R. 848.

Wulfekuhler State Bank v. Wible.

No. 4, due November 15, 1922, purchased September 15, 1922.
No. 5, due May 15, 1923, purchased September 15, 1922.
No. 6, due June 15, 1923, purchased September 15, 1922.

Plaintiff was a holder in due course of note No. 2. Judgment upon it in favor of plaintiff is not contested, and henceforth, except for the purpose of an illustration, it may be regarded as out of the case. When note No. 1 was purchased, semiannual interest on it was due and unpaid. When the remaining notes were purchased, note No. 1 was due and unpaid, and semiannual interest on all the notes was due and unpaid.

The petition alleged that, at the time the notes were executed, and for the purpose of securing them, and as part of the same transaction, the maker of the notes executed and delivered to the payee the chattel mortgage. The chattel mortgage described fifteen notes, aggregating $8,150, and provided that, if default should be made in the payment of the total sum, or any part thereof, or any interest thereon, the whole amount should become due and payable at once. Therefore, when plaintiff acquired the notes, they were all overdue. (*Stanclift v. Norton*, 11 Kan. 218, 222; *McMillan v. Gardner*, 88 Kan. 279, 128 Pac. 391, and cases cited in the opinion; 34 A. L. R. 848-861.)

The jury returned the following special finding of fact:

"Did the plaintiff acquire said notes with knowledge that the chattel mortgage set forth in plaintiff's seventh cause of action by its terms accelerated the payment and made all of said notes due by reason of the nonpayment of interest? A. Yes."

Plaintiff contends this finding was not sustained by the evidence. On redirect examination, plaintiff's cashier testified as follows:

"Q. Now, you testify that you had examined a lot of these mortgages. Did you examine this particular mortgage in suit? Did you ever read that over or see it? A. No, sir."

Disregarding this answer, as the jury appears to have done with the approval of the trial court, the evidence warranted the inference of fact expressed by the finding. The result is, plaintiff was not a holder in due course, as that term is defined by the negotiable instruments law:

"A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had

no notice of any infirmity in the instrument or defect in the title of the person negotiating it." (R. S. 52-502.)

Plaintiff relies on the amendment to section 5 of the negotiable instruments law adopted by the legislature of 1917. The section now reads as follows, the matter inserted by amendment being italicized:

"An instrument which contains an order or promise to do any act in addition to the payment of money is not negotiable. But the negotiable character of an instrument otherwise negotiable is not affected by a provision which: (1) Authorizes the sale of collateral security in case the instrument is not paid at maturity, or in case the security should depreciate in value, or in case the holder for reasonable cause deems himself insecure; or (2) authorizes a confession of judgment if the instrument be not paid at maturity; or (3) waives the benefit of any law intended for the advantage or protection of the obligor; or (4) gives the holder an election to require something to be done in lieu of payment of money; *or (5) provisions or agreements in concurrent writings or mortgages given to secure payment of such instruments,* but nothing in this section shall validate any provision or stipulation otherwise illegal." (R. S. 52-205.)

The amendment did not render invalid contracts in mortgages that maturity of the instruments described should be accelerated on stated conditions, and maturity of notes sued on was accelerated by virtue of the provision of the chattel mortgage, notwithstanding the amendment to the statute. The amendment was confined to original section 5 of the negotiable instruments law, and took no cognizance of original section 52 (R. S. 52-502). It will not be assumed the amendment by mere implication worked a fundamental change in the definition of holder in due course. Such a change would produce anomalous results. A purchaser could take paper as not overdue and dishonored, with all the privileges of a holder in due course, and immediately sue upon it as matured by an acceleration provision of the mortgage. The court concludes the amendment takes its place with the other subdivisions of section 5 (R. S. 52-205) relating to form and interpretation as affecting negotiability, and does not modify R. S. 52-502. Applying this interpretation of the amendment, the negotiability of note No. 2 was not affected by the fact that the chattel mortgage, read with the note, accelerated maturity of the entire series of notes. When plaintiff purchased note No. 2, none of the series was due by virtue of the provision of the mortgage or otherwise, and plaintiff became a holder in due course. All the other notes had been matured by the provision of the chattel mortgage when plaintiff purchased them. Plaintiff knew of the provision

in the mortgage; it could have brought suit on the notes immediately; and it was not a holder in due course.

Plaintiff complains that certain damages found by the jury were speculative. They do not affect the result. The provision of the contract of sale of the machinery which relieved from liability for delay, related to delay in operation after the machinery was set up, and in making changes. The guaranty contained in the contract did not require return of defective machinery, but gave the purchaser privilege to demand replacement of defective parts.

The judgment of the district court is affirmed.